# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| JACKSON COUNTY, MISSOURI,<br>on behalf of itself and the proposed Class, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 23-CV-00206-FJG |
| ELI LILLY AND COMPANY, et al., | ) ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION TO REMAND AND
## <u>SUGGESTIONS IN SUPPORT THEREOF</u>

Michael A. Williams
Eric L. Dirks
Matthew L. Dameron
**WILLIAMS DIRKS DAMERON LLC**
1100 Main Street, Suite 2600
Kansas City, Missouri 64105

*Counsel for Jackson County, Missouri*
*and the Proposed Class*

Bryan O. Covinsky
**OFFICE OF THE JACKSON COUNTY**
**COUNSELOR**
415 East Twelfth Street, Suite 200
Kansas City, Missouri 64106

DATED: April 25, 2023

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

STATEMENTS OF FACT .......................................................................................................... 2

LEGAL STANDARD ................................................................................................................. 6

ANALYSIS ................................................................................................................................. 6

CONCLUSION ......................................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Advanced Diabetes Treatment Centers of Florida, LLC v. Blue Cross and Blue Shield of Florida*, 2010 WL 11591055 (S.D. Fla. May 18, 2010) .................................................... 10, 11

*Bell v. Hershey Co.*, 557 F.3d 953 (8th Cir. 2009) ......................................................... 16

*BP PLC v. Mayor and City of Baltimore*, 141 S. Ct. 1532 (2021) ................................. 12

*Brokaw v. Boeing Co.*, 137 F. Supp. 3d 1082 (N.D. Ill. 2015) ........................................ 8

*Brown v. Mortg. Elec. Registration Sys., Inc.*, 738 F.3d 926 (8th Cir. 2013) ............... 15

*Buljic v. Tyson Foods, Inc.*, 22 F.4th 730 (8th Cir. 2021) ..................................... 1, 7, 8, 9

*City of O'Fallon Mo. v. Century-Link, Inc.*, 930 F. Supp. 2d 1035 (E.D. Mo. 2013) .................. 16

*CMH Homes, Inc. v. Goodner*, 729 F.3d 832 (8th Cir. 2013) ........................................ 15

*Cova v. Charter Commc'ns, Inc.*, 2016 WL 4368100 (E.D. Mo. Aug. 16, 2016) ......... 15

*Curts v. Waggin' Train, LLC*, 2013 WL 2319358 (W.D. Mo. May 28, 2013) ................ 17

*Doe, I v. BJC Health System*, 2023 WL 369427 ........................................................... 13

*Dyer v. Crowley Logistics, Inc.*, 2022 WL 16636233 (W.D. Mo. Nov. 2, 2022) ......... 8, 9

*Graves v. 3M Company*, 17 F.4th 764 (8th Cir. 2021) ........................................... Passim

*Green v. Ameritrade, Inc.*, 279 F.3d 590 (8th Cir. 2002) ................................................ 6

*Haller v. Kaiser Foundation Health Plan of the Northwest*, 184 F. Supp. 2d 1040 (D. Or. 2001) 10

*Hargis v. Access Capital Funding, LLC*, 674 F.3d 783 (8th Cir. 2012) ........................ 15

*In re Business Men's Assur. Co. of America*, 992 F.2d 181 (8th Cir. 1993) .................... 6

*In re Hannaford Bros. Co. Customer Data Sec. Branch Litig.*, 564 F.3d 75 (1st Cir.2009) ......... 17

*In re Prempro Prods. Liab. Litig.*, 591 F.3d 613 (8th Cir. 2010) .................................... 6

*In re Sprint Nextel Corp.*, 593 F .3d 669 (7th Cir. 2010) ............................................... 17

*In re Vioxx Products Liability Litigation*, 843 F. Supp. 2d 654 (E.D. La. 2012) .......................... 17

*Johnson v. Quiktrip Corp.*, 2021 WL 5541780 (W.D. Mo. April 6, 2021) .................................... 6

*Minnesota by Ellison v. American Petroleum Institute*, 63 F.4th 703 (8th Cir. 2023) ................. 13

*Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014) ....................................... 17

OPM., 701 F.3d 1224 (8th Cir. 2012) ......................................................................................... 12

*Orthopedic Specialists of New Jersey PA v. Horizon Blue Cross / Blue Shield of New Jersey*, 518 F. Supp. 2d 128 (D.N.J. 2007) ................................................................................................... 11

*Pope v. Bradley County Tennessee*, 2020 WL 3642259 (E.D. Tenn. July 6, 2020) ..................... 18

*Ramirez v. Vintage Pharms., LLC*, 852 F.3d 324 (3d Cir. 2017) ................................................. 17

*Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981 (9th Cir. 2019) .................................................. 10

*Scimone v. Carnival Corp.*, 720 F.3d 876 (11th Cir. 2013) ......................................................... 17

*Scott v. Cerner Corp.*, 2015 WL 5227431 (W.D. Mo. Sept. 8, 2015) .......................................... 18

*Sheridan Healthcorp, Inc. v. Aetna Health, Inc.*, 161 F. Supp. 3d 1238 (S.D. Fla. 2016) ........... 10

*Smith v. Scottsdale Ins. Co.*, 2022 WL 17252203 (W.D. Mo. Oct. 3, 2022) ................................ 16

*Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619 (8th Cir. 1997) ...... 6

*Transitional Hospitals Corporation of Louisiana, Inc. v. Louisiana Health Service & Indemnity Company*, 2005 WL 2037553 (E.D. La. Aug. 16, 2005) ......................................................... 10

*Watson v. Philip Morris Co.*, 551 U.S. 142 (2017) ............................................................... 6, 10

*West Virginia State University Board of Governors v. Dow Chemical Company*, 23 F.4th 288 (4th Cir. 2022) ................................................................................................................................ 10

*Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819 (8th Cir. 2010) ........................................... 14

*Yarnell v. Clinton No. 1, Inc.*, 591 F. Supp. 3d 432 (W.D. Mo. 2022) .......................................... 7

**Statutes**

28 U.S.C. § 1332(d) ..................................................................................................................... 1

28 U.S.C. § 1332(d)(4)(A) ........................................................................................................ 18

28 U.S.C. § 1332(d)(5)(B) ........................................................................................................ 15

28 U.S.C. § 1442(a)(1) ........................................................................................................ 1, 2

Mo. Rev. Stats. §§ 81.080 ........................................................................................................ 16

## INTRODUCTION

Jackson County, Missouri filed its Petition in Missouri state court. CaremarkPCS Health, LLC (Caremark) filed a Notice of Removal premised on its status as a "federal officer" under 28 U.S.C. § 1442(a)(1). *See* Notice of Removal [Doc. 1]. Three other defendants filed a Supplemental Notice of Removal premised on the Class Action Fairness Act (CAFA), codified at 28 U.S.C. § 1332(d).[1] *See* Supplemental Notice of Removal [Doc. 2]. Defendants' removal is improper under either basis.

Caremark does not qualify as a "federal officer" for removal purposes. Caremark relies on an unrelated federal contract to support its claim of federal officer status, but that contract doesn't mandate or dictate the conduct addressed in the County's Petition. The existence of a contract isn't enough—Caremark must show that it operates under the government's strict mandates and with the government exercising sufficient oversight and control. Caremark can't satisfy this showing and the Court must reject its removal under the "federal officer" provision in section 1442. *See, e.g., Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021); *Graves v. 3M Company*, 17 F.4th 764, 769 (8th Cir. 2021).

The Manufacturer Defendants' Supplemental Notice is equally deficient. It's undisputed that the County's Petition doesn't satisfy CAFA's jurisdictional requirement for 100 or more members of the proposed Class. Yet Manufacturer Defendants would have this Court rewrite the Petition and expand the definition of the proposed Class to suit their ends. Courts don't sanction such an effort, and the Court must reject the Manufacturer Defendants' arguments.

In support of its Motion to Remand, Jackson County respectfully submits the following:

---

[1] These defendants are Eli Lilly & Company, Sanofi-Aventis U.S. LLC, and Novo Nordisk, Inc. (collectively the Manufacturer Defendants).

## STATEMENTS OF FACT

Jackson County, Missouri filed its Petition against Defendants alleging an ongoing scheme to inflate the price of insulin artificially and unjustifiably, thereby harming the County and other insulin purchasers. The Petition alleges two causes of action, both brought exclusively under Missouri law: unjust enrichment (Count I), and civil conspiracy (Count II). The County brings the Petition on behalf of Missouri cities and counties that are payors for their employees' insulin. *Id.* at ¶ 330. Four Defendants removed the case to this Court.

### FACTS CONCERNING CAREMARK'S NOTICE OF REMOVAL [DOC. 1]

Caremark's Notice of Removal [Doc. 1] contends that it is a "federal officer" under 28 U.S.C. § 1442(a)(1) and bases its removal on what's known as "federal officer removal." In simple terms, Caremark's argument is this: (1) as a pharmacy benefits manager, Caremark provides services to health care plans governed by the Federal Employees Health Benefits Act (FEHBA); (2) the FEHBA "assigns to OPM [the Office of Personnel Management] broad administrative and rulemaking authority over the program"; and (3) OPM does not prohibit rebates between Caremark and manufacturers, thereby providing Caremark a defense to the County's litigation. According to Caremark, it's entitled to federal officer removal (and federal defenses) because the payments between manufactures and PBMs are "contemplated" by its contract with OPM.

Three documents are central to the Court's analysis: (1) Jackson County's Petition; (2) Caremark's Notice; and (3) the OPM Standard Contract that Caremark argues confers federal officer status on the company:

***Jackson County's Petition:*** The Petition challenges the insulin prices charged by Defendants. Caremark attempts to recast the Petition as an attack on manufacturer payments, but a fulsome reading of the Petition demonstrates that it's challenging the <u>price</u> that Defendants

2

charge for insulin. If, as Caremark contends, the Petition was intended as a broadside attack on manufacturer payments, then it wouldn't be limited to insulin because manufacturer payments to PBMs in exchange for formulary placement are offered on many categories of pharmaceutical drugs—not just insulin. But the Petition is narrowly drawn to challenge insulin prices that, allegedly, are unjust under Missouri law. To the extent the Petition discusses manufacturer payments, it's solely because those payments are the method of effectuating the insulin pricing overcharges.[2]

Caremark's Notice tries to recast the Petition as implicating federal issues, but the Petition clearly does not do several things:

- it doesn't assert any federal cause of action;

- it doesn't implicate any federal statutes, regulations, or other rules[3];

- it doesn't seek to affect or impact federal employees or federal employee health plans governed by the FEHBA;

- it doesn't pursue claims beyond the County's and the proposed Class members' status as purchasers of insulin (i.e., it does not pursue a *parens patriae* theory); and

- it doesn't seek to dismantle or bar manufacturer payments other than to the extent they enable inflated prices for insulin.

---

[2] An analogy from the criminal context illustrates this point: Sending mail is a legal activity, but using the mail to commit a fraud is illegal. The action is permissible, but using the exact same action to effectuate an underlying unlawful purpose makes it illegal. The same is true here. Manufacturer payments to PBMs are legal, but the County alleges that using those payments to prop up and effectuate an illegal scheme (i.e., charging unjust prices for insulin) violates the law. In this respect, the County challenges the insulin prices exclusively.

[3] The Petition expressly disavows any federal cause of action or any reliance on federal law. Petition at ¶¶ 199-200 ("Thus, Jackson County's Petition does not involve any federal issue nor does it require the interpretation and/or application of federal law, nor does it implicate any federal aid programs.").

Thus, the County's Petition—the Court's touchstone for evaluating subject matter jurisdiction—does not implicate federal law in any way.

***Caremark's Notice of Removal:*** Caremark's Notice is not premised on diversity jurisdiction or federal question jurisdiction; rather, it is based on "federal officer removal" under section 1442. According to Caremark, because it has contracts with OPM to provide PBM benefits for federal employees, it is acting "under the direction of a federal officer" sufficient to justify removal to federal court. According to Caremark, its contracts with OPM "contemplate" manufacturer payments and provide a safe haven for the practice. Notice [Doc. 1] at ¶ 7.

Like the County's Petition, it bears discussing what Caremark's Notice <u>does not</u> proffer:

- it doesn't cite any federal statutes, regulations, or other rules governing the price of insulin—the primary thrust of the County's Petition;

- it doesn't cite any federal statutes, regulations, or other rules governing manufacturer payments, including any authority that expressly permits them or sets their rates; and

- it doesn't cite any authority for the proposition that its contract with OPM governs non-FEHBA healthcare plans like those sponsored by Jackson County and members of the proposed Class.

Thus, Caremark's Notice relies exclusively on the OPM Contract as its basis for removal; the Notice's silence on any other federal provision demonstrates that there's no other applicable regulation of either insulin prices or manufacturer payments.

***OPM's Standard Contract:*** Caremark's Notice leaves the reader with a misimpression: that OPM somehow mandates or requires manufacturer payments to PBMs. It does not.

4

Caremark states that "OPM expressly <u>contemplates</u> that FEHBA carrier-PBM contracts might include 'Manufacturer Payments.'" Notice [Doc. 1] at ¶ 7 (emphasis added).[4] Although the Standard Contract does not preclude or bar manufacturer payments, it also does not mandate them. Nor does it address the amounts of any such payments.

Instead, the Standard Contract requires that the PBM pass along to the carrier and OPM any savings that it realizes from manufacturer payments:

> The PBM, or any other entity that negotiates and collects Manufacturer Payments allocable to the Carrier agrees to credit the Carrier either as a price reduction or by cash refund the value of all Manufacturer payments properly allocated to the Carrier.

Ex. 1 at § 1.28(a)(2)(iii) (page I-18). Thus, OPM's Standard Contract simply says that <u>*if*</u> a PBM receives manufacturer payments, then the PBM must credit the OPM-related carrier the amount of the payment—i.e., a pass-through cost savings provision. Other than this provision, to the limited extent the Standard Contract is mandatory, it is only to require reporting about the receipt of manufacturer payments for transparency purposes; this provision is not at issue in the County's Petition. *Id.* at § 1.28(a)(5).[5]

Thus, out of a Standard Contract that spans over 130 pages with exhibits, <u>there is no provision of the Standard Contract that requires or regulates in any way manufacturer payments to PBMs</u>.

---

[4] Caremark didn't attach the Standard Contract to its Notice; a full copy of the Standard Contract is attached as Exhibit 1.

[5] Caremark also suggests that OPM requires all contracts to be reviewable by OPM "upon request." Notice [Doc. 1] at ¶ 9. Again, this is a transparency and reporting provision related to voluntary contracts between PBMs and manufacturers—nothing more. *See* Ex. 1 at § 1.28(a)(9).

The County's Petition is brought on behalf of a proposed Class of Missouri counties and municipalities with a population greater than 20,000; the proposed Class size—according to the 2020 Census data—is approximately 90 members. *See* Petition at ¶ 330 and Exhibit A. The Petition's claims are filed exclusively under Missouri law, and the Petition disclaims any federal jurisdiction. *Id.* at ¶¶ 196-200.

## LEGAL STANDARD

The removing party bears the burden of establishing federal subject matter jurisdiction. *See In re Business Men's Assur. Co. of America*, 992 F.2d 181, 183 (8th Cir. 1993).[6] "The removal statute is to be narrowly construed, and any doubt about the propriety of removal is resolved in favor of state court jurisdiction." *Johnson v. Quiktrip Corp.*, No. 21-CV-0025, 2021 WL 5541780, *2 (W.D. Mo. April 6, 2021) (Gaitan, J.).[7] "A defendant may remove a state law claim to federal court only if the action originally could have been filed there." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010).

## ANALYSIS

### CAREMARK'S NOTICE OF REMOVAL [DOC. 1] FAILS

The purpose of federal officer removal is to prevent interference with the federal government's operations caused, for example, by a state's prosecution of federal officers and agents acting within the scope of their authority. *Watson v. Philip Morris Co.*, 551 U.S. 142, 150 (2017). It also protects federal officers and agents from "local prejudice." *Id.*

---

[6]      Except where noted, internal citations and quotations have been omitted throughout.

[7]      *See also Green v. Ameritrade, Inc.*, 279 F.3d 590, 596 (8th Cir. 2002); *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997).

To remove an action under section 1442, a non-governmental entity must demonstrate that "(1) it is a person as defined in the statute that has acted under the direction of a federal officer; (2) there was a causal connection between its actions and the official authority; and (3) it has a colorable federal defense to the plaintiff's claims." *Graves v. 3M Company*, 17 F.4th 764, 769 (8th Cir. 2021).[8] This Court previously held that "because the second requirement hinges on the first, the principal issue is whether [d]efendant was acting under the direction of a federal officer." *Yarnell v. Clinton No. 1, Inc.*, 591 F. Supp. 3d 432, 435-36 (W.D. Mo. 2022) (Gaitan, J.). In this case, Caremark doesn't satisfy any of these elements.

### *Caremark is not "acting under the direction" of a federal officer*

#### o **There is no government regulation or mandates for insulin prices**

To avail itself of the federal officer removal statute, Caremark must demonstrate that it was "'acting under' a federal officer or agency in carrying out the acts that underlie the plaintiff's complaint." *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021). Although the words are "broad," Caremark cannot satisfy this standard because:

> not all relationships between private entities and the federal government satisfy this element. Instead, the assistance that private contractors provide federal officers must go beyond simple compliance with the law and help officers fulfill their basic governmental tasks.

> The private entity's actions must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior, and this relationship typically involves subjection, guidance, or control.

*Id.* at 738 (finding federal officer removal improper when a meat processing plant was implementing COVID-19 emergency orders and regulations).

---

[8]     The County does not dispute that Caremark is a "person" under 28 U.S.C. § 1442.

A party may not remove under section 1442 "simply because a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail." *Graves*, 17 F.4th at 769. Similarly, just because an entity "is subject to pervasive federal regulation alone is not sufficient to confer federal jurisdiction. . . . Instead, the private entity must help federal officers fulfill 'basic governmental tasks.'" *Buljic*, 22 F.4th at 739.

Moreover, removal is improper if "the private defendant made the actual decisions that formed the basis of the plaintiff's claims." *Dyer v. Crowley Logistics, Inc.*, No. 22-3246, 2022 WL 16636233, *3 (W.D. Mo. Nov. 2, 2022) (quoting *Brokaw v. Boeing Co.*, 137 F. Supp. 3d 1082, 1098 (N.D. Ill. 2015)). In other words, "if the private company had discretion" in how to carry out the provisions of a federal contract, then removal is improper. *Id.*

In this case, the County's Petition challenges the exorbitant prices of insulin and the unjust profits realized by Defendants related to those overcharges. But Caremark can't point to a single regulatory mandate governing how Defendants price their insulin. Simply put, Caremark can't point to any regulatory provision (including OPM's Standard Contract) that sets insulin prices or dictates to Defendants how they must price insulin; thus, Caremark can't avail itself of the federal officer removal statute.

Caremark's Notice still falters, though, even if the County's Petition is construed as challenging manufacturer payments to PBMs. Caremark relies on the Standard Contract from OPM as the basis for its federal officer removal. Notice [Doc. 1] at ¶¶ 7-10. Caremark contends that the Standard Contract somehow provides sufficient governmental oversight of manufacturer payments to make them ineligible for state court treatment. However, as outlined above, the OPM's Standard Contract doesn't in any way mandate, regulate, or govern contracts between manufacturers and PBMs. The Standard Contract briefly mentions manufacturer payments, but

only for the purposes of: (1) ensuring that any savings associated with manufacturer payments are passed on to the carrier, and (2) ensuring transparency. Put directly, Caremark has not and cannot point to a single regulatory mandate that either requires manufacturer payments to PBMs, sets the amount of those payments, or governs them in any other way.

Thus, Caremark and the other Defendants exercise their discretion free from meaningful government oversight or regulation to (1) set the price of insulin, and/or (2) engage in manufacturer payments to PBMs. The narrow provisions of the Standard Contract—Caremark's exclusive basis for federal officer removal—don't cut it.

These facts dictate only one conclusion: Caremark's attempted federal officer removal is improper. *Graves*, 17 F.4th at 769 (federal officer removal inappropriate "simply because a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail"); *see also Dyer*, 2022 WL 16636233, at *3 (federal officer removal unwarranted if "the private defendant made the actual decisions that formed the basis of the plaintiff's claims" and exercised discretion in making decisions); *Buljic*, 22 F.4th at 741 (statements from the federal government that don't "even tell [a third party] specifically what to do" are insufficient).

The decision in *Riggs v. Airbus Helicopters, Inc.* illustrates this point. In *Riggs*, a plaintiff sued a helicopter manufacturer, and the manufacturer removed the case to federal court under section 1442. The manufacturer alleged that it was required to comply with the Federal Aviation Administration's inspections and certifications, and that it couldn't modify its design without FAA approval. The appellate court rejected this argument, finding that the manufacturer's duties were tantamount to *compliance* rather than *assistance*, and "mere compliance with federal directives does not satisfy the 'acting under' requirement of section 1442(a)(1), even if the actions are highly

9

supervised and monitored." *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981, 989 (9th Cir. 2019) (quoting *Watson*, 551 U.S. at 153).

In this case, Caremark is doing nothing more than complying with OPM's transparency and pass-through requirements. OPM does not mandate or establish insulin prices or manufacturer payments, meaning that Caremark is not entitled to federal officer removal under section 1442.

> o **Without more, Caremark's Standard Contract with OPM is insufficient**

The existence of the Standard Contract alone is insufficient—Caremark still must show the requisite level of control to satisfy federal officer removal. *See West Virginia State University Board of Governors v. Dow Chemical Company*, 23 F.4th 288, 300-01 (4th Cir. 2022) ("[W]e have also held that a private actor who merely has a contract with the federal government to produce or provide goods is not sufficient, on its own, to justify removal. . . . [E]ven when a contract specifies the details of the sales and authorizes the government to supervise the sale and delivery, the simple sale of contracted goods and services is insufficient to satisfy the federal officer removal statute.").

Indeed, courts routinely hold that OPM contractors don't satisfy the federal officer removal statute:

- *Transitional Hospitals Corporation of Louisiana, Inc. v. Louisiana Health Service & Indemnity Company*, No. 05-2221, 2005 WL 2037553 (E.D. La. Aug. 16, 2005);

- *Sheridan Healthcorp, Inc. v. Aetna Health, Inc.*, 161 F. Supp. 3d 1238, 1248-50 (S.D. Fla. 2016);

- *Haller v. Kaiser Foundation Health Plan of the Northwest*, 184 F. Supp. 2d 1040 (D. Or. 2001);

- *Advanced Diabetes Treatment Centers of Florida, LLC v. Blue Cross and Blue Shield of Florida*, No. 06-22036, 2010 WL 11591055 (S.D. Fla. May 18, 2010); and

- *Orthopedic Specialists of New Jersey PA v. Horizon Blue Cross / Blue Shield of New Jersey*, 518 F. Supp. 2d 128 (D.N.J. 2007).

The decision in *Advance Diabetes Treatment Centers of Florida* is on point. In that case, a healthcare provider sued Blue Cross under a Florida reimbursement statute and other common law claims. Blue Cross claimed that because of its obligations under the FEHBA and OPM regulations it was a "federal officer" entitled to removal. The Court disagreed:

> [T]he Court concludes that Blue Cross has failed to establish that removal is proper under [section 1442(a)(1)] because of the OPM's involvement in administering FEHBA plans in the context of this case.
>
> It is well established that the presence of federal regulations does not satisfy the requirements to assert federal jurisdiction pursuant to [section 1442(a)(1)]; and, moreover, asserting that a defendant's conduct is performed at the general direction of a federal agency does not rise to the level of removal based on [section 1442(a)(1)].

2010 WL 11591055, at *5. Thus, the mere existence of a duty (in the County's case, the duty of transparency and pass-through payments to Caremark's clients) under the OPM / FEHBA regulatory scheme does not confer federal officer status that warrants removal under section 1442(a)(1).

In its Notice, Caremark cited *Jacks v. Meridian Resource Co., LLC* to support the proposition that a contract with OPM somehow confers federal officer status under section 1442. But the facts in *Jacks* perfectly illustrate why the County's Petition is different and doesn't satisfy section 1442's requirements.

In *Jacks*, the Eighth Circuit found that a healthcare administrator was a "federal officer" for purposes of removal when the administrator asserted a subrogation lien against a federal employee's personal injury case. The Eighth Circuit based its ruling on several factors that aren't present in the County's case against Defendants; in *Jacks*: (1) the claimant was a federal employee

who participated in a healthcare plan covered by the FEHBA; (2) OPM "has direct and extensive control over these benefit contracts under the FEHBA"; and (3) the administrator was pursuing subrogation rights that were directly derivative of its authority from OPM. 701 F.3d 1224, 1234 (8th Cir. 2012).[9] *Jacks* also relied on several provisions in the Code of Federal Regulations that applied to the administrator's subrogation claims.

 *Jacks* warned against reading its holding too expansively—the same reading Caremark would have this Court adopt:

> By way of this ruling, we do not open the door to all private firms doing business in industries that are highly regulated by the federal government.
>
> ***Nor does our conclusion rest upon the fact that the FEHBA creates a highly regulated arena wherein the OPM supervises and monitors many aspects of the provider's activities***.

*Jacks*, 701 F.3d at 1234 (emphasis added). Thus, while the unexamined holding of *Jacks* seems to support Caremark's Notice, its facts do not, and this Court should heed the Eighth Circuit's narrowing of its own ruling so as not to expand the FEHBA / OPM regulatory scheme to all contractors.

 In sum, these exemplar cases underscore the narrow application of federal officer removal because the court rejected federal officer status, even where the case concerned either : (1) healthcare benefits provided to a federal employee (or the employee's dependent), and/or (2) a health plan for federal employees directly regulated by the FEHBA. This case, in contrast, doesn't have any federal component to it—it does not involve benefits for federal employees or healthcare

---

[9] *Abrogated on other grounds by BP PLC v. Mayor and City of Baltimore*, 141 S. Ct. 1532 (2021).

plans for federal employees. Given Caremark's tenuous claim that it's "acting under" a federal officer, the Court should remand the County's Petition.

### *Caremark cannot demonstrate a causal connection between its alleged federal officer conduct and the County's claims*

Even if Caremark could somehow manage to establish that it's "acting under" a federal officer, it can't also demonstrate a causal connection between its conduct under the federal officer and the County's claims.

"To be sure, the causal connection requirement is distinct from the 'acting under' requirement . . . there must be a causal connection between the charged conduct and asserted official authority." *Graves*, 17 F.4th at 769. It requires "that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Minnesota by Ellison v. American Petroleum Institute*, 63 F.4th 703 (8th Cir. 2023) (finding that petroleum companies' federal production requirements were too tenuous to support removal where the state pursued claims related to marketing). "This 'causal connection' requirement remains the test in the Eighth Circuit." *Doe, I v. BJC Health System*, No. 22-919, 2023 WL 369427, *5 n. 6 (E.D. Mo. Jan. 10, 2023) (rejecting the "connected to" standard espoused by Caremark's Notice).

Again, the County's Petition challenges insulin pricing only. It does not challenge the ability of Caremark and Defendants to participate in rebates with manufacturers. Thus, unless Caremark can demonstrate that its insulin prices were dictated by OPM—a showing it can't make—then it can't demonstrate that its acts pursuant to the OPM contract "form the basis for the state civil or criminal suit" or that its insulin pricing was established "pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Minnesota by Ellison*, 63 F.4th at 714.

Because OPM doesn't dictate insulin pricing among Defendants, Caremark can't satisfy the "causal connection" requirement of section 1442.

### *Caremark cannot identify a colorable federal defense*

"[F]ederal officer removal must be predicated on the allegation of a colorable federal defense." *Graves*, 17 F.4th at 770. In this case, even assuming Caremark can establish the first two elements of section 1442 based on the Standard Contract with OPM, that contract doesn't give rise to a defense to the County's insulin-pricing claims. At most, the Standard Contract authorizes manufacturer payments to PBMs (again, reading it in the light most favorable to Caremark), but it doesn't establish insulin prices or rates. Thus, the Standard Contract, which is completely silent on insulin prices, can't provide a defense to the County's Petition. Put another way, even if the Missouri court grants all the relief requested in the County's Petition, it won't impact Caremark's contractual duties under the Standard Contract. Accordingly, Caremark can't claim it has a colorable federal defense.

### *Summary*

Federal officer removal for non-governmental entities is limited to those narrow circumstances where the federal government directly controls, regulates, and mandates certain conduct. Caremark has failed to adduce any evidence that satisfies this requirement, and the Court should grant Jackson County's Motion to Remand.

### MANUFACTURER DEFENDANTS' SUPPLEMENTAL NOTICE OF REMOVAL [DOC. 2]

Manufacturer Defendants' Notice of Removal is premised on the Class Action Fairness Act of 2005 ("CAFA"). CAFA retained the general rule that the proponent of federal jurisdiction bears the burden of establishing jurisdiction. *See Westerfeld v. Indep. Processing, LLC,* 621 F.3d 819, 822 (8th Cir. 2010).

*The County's Petition does not meet CAFA's threshold*

In their Supplemental Notice, Manufacturer Defendants avoid the plain language of CAFA, ignore the plain language of the case law from the Eighth Circuit, and rely on speculation to attempt to meet their burden. But it remains uncontested that for this Court to have diversity jurisdiction, the proposed class *must* consist of 100 class members. 28 U.S.C. § 1332(d)(5)(B) (expressly excluding from CAFA jurisdiction: "any class action which – the number of members of all *proposed* plaintiff classes in the aggregate is less than 100."); *see also Brown v. Mortg. Elec. Registration Sys., Inc.,* 738 F.3d 926, 932 (8th Cir. 2013) ("the § 1332(d)(5)(B) limitation applies only to 'proposed' plaintiff classes....").

"To determine whom the proposed class comprises, courts "look[ ] through to 'the entire, actual controversy between the parties, as they have framed it.' " *Cova v. Charter Commc'ns, Inc.*, No. 16-CV-675, 2016 WL 4368100, at *2 (E.D. Mo. Aug. 16, 2016) (citing *CMH Homes, Inc. v. Goodner*, 729 F.3d 832, 837–38 (8th Cir. 2013)). "The "operative complaint at the time of removal...controls this determination." *Id.* (citing *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 790 (8th Cir. 2012)). "Thus, subject matter jurisdiction exists if the defendant evidences it is more likely than not that 100 or more people meet the proposed class definition pled in the complaint, assuming the allegations as framed by the complaint are true." *Id.*

In this case, the proposed Class indisputably numbers less than 100 and the Court is without jurisdiction. The analysis stops there.

To try to avoid this inevitability, Defendants attempt to engineer ways to re-characterize Plaintiff's proposed Class as having more than 100 members. But the County is the master of its Petition and the proposed Class definition—not Defendants who suggest that the class *ought* to be (in their opinion) all Missouri diabetics and payors. Defendants do not get to determine the

proposed Class's parameters or the County's legal theories. "The enactment of CAFA did not alter the proposition that the plaintiff is the master of the complaint." *Bell v. Hershey Co.,* 557 F.3d 953, 956 (8th Cir. 2009); *see also City of O'Fallon Mo. v. Century-Link, Inc.*, 930 F. Supp. 2d 1035, 1039 (E.D. Mo. 2013) ("The enactment of CAFA did not alter the traditional rule that the plaintiff is the 'master of the complaint,' and as such, jurisdictional facts must be considered in light of the allegations as contained in the plaintiff's complaint at the time of removal.").

Defendants then assume, without any basis, that the class definition is drafted to avoid CAFA's jurisdiction. But the reality is that the County pleaded its proposed Class to make the case more manageable. The specter of coordinating the 90 largest subdivisions will be manifestly more practical than doing so for the over 1,000 entities (or over 1,000,000 diabetics) as Manufacturer Defendants claim should be included in the case.

Jackson County's population threshold for the proposed Class (cities and counties with 20,000 or more residents) is not arbitrary. Indeed, the Missouri General Assembly has repeatedly used this precise dividing line in enacting legislation affecting municipalities. *See, e.g.,* Mo. Rev. Stats. §§ 81.080; 81.130; 81.200; 81.250; 81.260; and 81.270 (statutes pertaining to political subdivisions with over 20,000 inhabitants). Thus, the 20,000 person population classification is a recurring threshold for Missouri law and other sources.[10]

The Court must evaluate the County's proposed Class definition as pleaded. *Smith v. Scottsdale Ins. Co.,* No. 22-04115, 2022 WL 17252203, at *2 (W.D. Mo. Oct. 3, 2022) ("[A] plaintiff is master of the Complaint. A plaintiff can opt to bring only certain claims in order to defeat federal jurisdiction, in which case the federal court cannot insert the unasserted claims to

---

[10]      *See, e.g.*, "Big City, Small Town, or Something in Between," Dwellics (defining small town as area with 2,500 to 20,000 residents and small urban area as 20,000-250,000 residents), available at https://dwellics.com/blog/big-city-small-town-or-something-in-between/.

create jurisdiction where it does not exist. A plaintiff can define his class in a manner that deprives a court of jurisdiction under CAFA.") (collecting cases); *Curts v. Waggin' Train, LLC*, No. 13-0252, 2013 WL 2319358, at *1-2 (W.D. Mo. May 28, 2013) (finding "Plaintiff is the master of her complaint" and rejecting the defendant's invitation to expand the class definition to fall within the scope of CAFA); *In re Sprint Nextel Corp.,* 593 F .3d 669, 673 (7th Cir. 2010) ("[P]laintiffs are free to 'circumscribe their class definition' so that they can ... avoid federal jurisdiction."); *In re Hannaford Bros. Co. Customer Data Sec. Branch Litig.,* 564 F.3d 75, 81 (1st Cir.2009) (rejected the argument that plaintiff had improperly defined a state-specific class)). *See also Ramirez v. Vintage Pharms., LLC*, 852 F.3d 324, 330 (3d Cir. 2017) ("[a]s masters of their Complaint, Plaintiffs may structure their action in such a way that intentionally avoids removal under CAFA.") (citing *Scimone v. Carnival Corp.*, 720 F.3d 876, 883–84 (11th Cir. 2013)).

Jackson County defined the scope of the proposed Class in order to present a manageable case, and it's entitled to do so as the master of its Petition.

Nor does the County's request for an injunction expand the size of the proposed Class. The County does not seek an injunctive class pursuant to Rule 23(b)(2) or its state court equivalent; instead, the County seeks an injunction against the alleged unlawful insulin prices charged by Defendants on behalf of itself and the proposed Class—nothing further. Although it's plausible that other cities and counties may *benefit* from an injunction awarded in this case, unnamed beneficiaries of injunctive relief do not count toward CAFA's numerosity requirement. *See Mississippi ex rel. Hood v. AU Optronics Corp.,* 571 U.S. 161, 175 (2014) (holding that under CAFA, potential unnamed beneficiaries of Mississippi's lawsuit do not count toward the 100 plaintiff threshold for mass actions); *In re Vioxx Products Liability Litigation,* 843 F. Supp. 2d

654, 666-68 (E.D. La. 2012) (rejecting CAFA bid based on argument that plaintiff's seeking of injunctive relief meant that beneficiaries of the injunction created diversity).

Simply put, CAFA has a clear, unequivocal threshold of 100 class members, and the County's Petition doesn't satisfy that threshold. Manufacturer Defendants don't get to rewrite the Petition to suit their ends, particularly when the population threshold in the proposed Class definition is consistent with Missouri statutes that draw the same distinction.

### *The County is also entitled to remand under CAFA's local controversy exception*

Alternatively, even if the Court had jurisdiction under CAFA, the Court would be required to decline federal jurisdiction under CAFA's "local controversy exception." This exception requires a court to decline jurisdiction of a class action if:

1. greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

2. at least 1 defendant is a defendant—

   a. from whom significant relief is sought by members of the plaintiff class;
   b. whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
   c. who is a citizen of the State in which the action was originally filed;

3. principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed;

4. during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

*See* 28 U.S.C. § 1332(d)(4)(A); *Scott v. Cerner Corp.*, No. 15-cv-00326, 2015 WL 5227431, at *2 (W.D. Mo. Sept. 8, 2015). Jackson County's Petition satisfies each of these elements:

**First,** all members of the proposed Class are Missouri cities and counties and, therefore, Missouri citizens. *See, e.g., Pope v. Bradley County Tennessee*, No. 20-CV-138, 2020 WL 3642259, at *2 (E.D. Tenn. July 6, 2020) (cities and counties are citizens of the state in which they

are located for diversity jurisdiction purposes) (collecting cases). Thus, *all* members of the proposed Class are Missouri citizens.

**Second,** the Express Scripts Defendants are primary defendants because Express Scripts is one of the three PBM families in the County's Petition, and Express Scripts is a Missouri citizen. *See* Petition at ¶¶ 105-151 (discussing the Express Scripts corporate family and their location in Missouri).

**Third,** all of the relief sought relates to overpayments made by Missouri citizens in the state of Missouri. This case does not assert claims on behalf of any class members located or injured in other states.

**Finally,** Manufacturer Defendants expressly acknowledge in their removal papers that no other similar case has been brought as a class action. *See* Supplemental Notice of Removal [Doc. 2] at ¶¶ 1-2 (noting other non-class insulin pricing cases but observing that "[u]nlike previous state and municipality plaintiffs, however, the County seeks class-action relief").[11]

Thus, even if the proposed Class satisfies CAFA's 100 class member requirement—which it doesn't—the Court would nonetheless be required to decline to exercise federal jurisdiction under CAFA's local controversy exception. Under either consideration, the outcome is the same: the Court must grant the County's Motion to Remand.

## CONCLUSION

Jackson County's Motion to Remand is not a close call. The notices of removal do not and cannot make the necessary showing to demonstrate that this Court has subject matter jurisdiction over the County's Petition. The arguments advanced in both documents would require the Court

---

[11]    Moreover, the other cases concerning insulin pricing are different because they all implicate federal antitrust and/or RICO statutes—no federal claim is at issue in the County's Petition.

to undertake a wholesale revision of the County's Petition and reject overwhelming precedent that dictates remand. The Court should grant Jackson County's Motion for Remand.

DATE: April 25, 2023

Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

*/s/ Michael A. Williams*

Michael A. Williams    MO Bar No. 47538
Eric L. Dirks    MO Bar No. 54921
Matthew L. Dameron    MO Bar No. 52093
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Telephone:    (816) 945-7100
Facsimile:    (816) 945-7118
mwilliams@williamsdirks.com
dirks@williamsdirks.com
matt@williamsdirks.com

Bryan O. Covinsky
County Counselor
**OFFICE OF THE JACKSON COUNTY COUNSELOR**
415 East Twelfth Street, Suite 200
Kansas City, Missouri 64106
Telephone:    (816) 881-3442
Facsimile:    (816) 881-3398
bcovinsky@jacksongov.org

***Counsel for Jackson County, Missouri and the Proposed Class***

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was filed on April 25, 2023, via the Court's ECF / PACER electronic filing system, which effectuated service of the foregoing on all counsel of record.

*/s/ Michael A. Williams*

Counsel for Plaintiff and the Proposed Class